## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RISA BILLUPS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 07-0367(JR) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COMES NOW, the Plaintiffs, by and through counsel, and respectfully moves this Court to deny the Defendant's Motion to Dismiss. The grounds for the Plaintiffs' opposition are set forth in the accompanying Memorandum of Points and Authorities. A proposed Order is also attached.

DATE: May 25, 2007

Respectfully submitted,
Counsel for Plaintiffs


_____/s/_____
Paul S. Dalton, Esq. (Bar. No. 439118)
DALTON, DALTON & HOUSTON, P.C.


_____/s/_____
Ellen Douglass Dalton, Esq. (Bar. No. 411612)
DALTON, DALTON & HOUSTON, P.C.


_____/s/_____
William E. Houston, Esq. (Bar. No. 450223)
DALTON, DALTON & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, VA 22314
(703) 739-4300
(703)-739-2323 (fax)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RISA BILLUPS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 07-0367(JR) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
**OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**

**BACKGROUND**

The Plaintiffs in this action consist of parents who retained legal counsel to represent

them with regards to the special education needs of their children, and children who are wards of

the District of Columbia. The undersigned attorneys and other members of their firm were

appointed by the District of Columbia Superior Court to act as the educational advocate, or

guardian for purposes of education, for the Plaintiffs who are wards of the District of Columbia.

This action was commenced by the Plaintiffs in response to unpaid attorneys' fees by the

District of Columbia Public Schools ("DCPS"). All of the Plaintiffs named filed for a due

process hearing based on violations by DCPS of the Individuals with Disabilities Education Act

("IDEA"). 20 U.S.C. § 1400 *et seq.* Each of the Plaintiffs were the prevailing parties at the due

process hearing, and, as such, sought payment of attorneys' fees, pursuant to IDEA, 20 U.S.C. §

1415(i)(3)(B). Invoices were submitted to DCPS in compliance with DCPS attorney fee

provisions for payment of the Plaintiffs' attorneys' fees.

Section 122 of the District of Columbia Appropriations Act of 2006 ("Section 122" or "cap") caps the amount of attorneys' fees that the District of Columbia can pay at $4,000.00. Some invoices were not paid at all and some invoices were partially paid but not up to the $4,000.00 cap. In each of these instances, DCPS did not provide an adequate explanation for why the invoices were reduced or not paid at all. Other invoices were not paid over the $4,000.00 cap.

## ARGUMENT

### I.    Legal Standard for Rule 12(b)(6) Motion to Dismiss

As stated in *Haynesworth v. Miller*, a motion to dismiss should be granted only when it appears beyond doubt that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief. 820 F.2d 1245, 1254 (D.C. Cir. 1987). Furthermore, the plaintiff enjoys the benefit of all inferences that plausibly can be drawn from well-pleaded allegations of the complaint. *Id.* When considering a motion to dismiss the court should liberally construe the complaint in the plaintiff's favor, and the court should grant to the plaintiff the benefit of all inferences that can be derived from the facts alleged, except bare conclusions of law or sweeping and unwarranted averments of facts. *Kowal v. MCI Communications Corp.*, 16 F3d 1271, 1276 (D.C. Cir. 1994).

The Plaintiffs' complaint sets forth facts that would support the claims for relief. The IDEA, and its accompanying regulations, grants parties prevailing at administrative hearings the right to be reimbursed for reasonable attorney's fees. DCPS failed to fully reimburse these Plaintiffs, even though they prevailed at the administrative level. Furthermore, the Plaintiffs' rights have been violated by the fee cap imposed by Section 122, because it effectively limits

their right to obtain effective assistance of counsel at administrative hearings held pursuant to IDEA.

## II.    The Plaintiffs do not fail to state a claim with regard to attorneys' fees and a violation of IDEA.

In its motion to dismiss, the Defendant argues that Plaintiffs' complaint is not clear with regard to how their rights have been violated under IDEA.  The complaint, however, states that the Plaintiffs were the prevailing parties in their administrative hearings, and that they subsequently submitted requests for attorneys' fees to DCPS.  These requests, however, were not paid in full, if paid at all.  According to IDEA, Section 1415(i)(3)(B), prevailing parties have the right to seek attorneys' fees.

The Defendant relies on Judge Urbina's Opinion in *Gray v. District of Columbia*[1] in asserting that the Defendant has not violated IDEA by failing to reimburse the Plaintiffs for attorney's fees because "only the court, (and not the defendant) may award plaintiffs reasonable attorneys' fees."  Civ. No. 06-0144 (D.D.C.), March 12, 2007 Memorandum Opinion.  Defendant also cites to *Bowman v District of Columbia* Civ. No. 06-016 (D.D.C. March 200, 2007) stating, "Thus, since 'plaintiffs do not have a statutory right to enforce until a court awards them attorneys' fees . . . [t]he complaint . . . cannot possibly be read to allege that the defendant is violating the plaintiff's statutory rights.'" Motion to Dismiss at 5 (citing *Bowman*, Memorandum Opinion at 6.)[2]

---

[1]        Plaintiffs appealed to the United States Court of Appeals for the District of Columbia Circuit.  The pending appeal is case number 07-7061.

[2]        The Plaintiff urges the Court to take notice of the differences between *Gray, Bowman, Jackson,* and the instant case.  In *Gray*, the plaintiffs sought reimbursement for fees that exceeded the $4,000.00 fee cap.  Judge Urbina dismissed *Gray* and the Plaintiffs appealed.  In *Bowman*, the plaintiffs sought reimbursement for fees up to or under the $4,000.00 fee cap.  *Bowman* is still pending before Judge Urbina and the parties are in the midst of submitting briefs.  The instant case, as well as *Jackson*, seek fees both under the $4,000.00 fee cap, as well as over

While it is true that IDEA permits prevailing plaintiffs to seek reimbursement of attorney's fees by filing a petition with the Court, this is not the policy and practice in the District of Columbia.  In an effort to preserve judicial economy, DCPS has an established a procedure by which plaintiffs prevailing in IDEA administrative hearings may petition DCPS directly for the reimbursement of attorneys' fees.  According to the established procedures, attorneys are to submit their itemized invoices, the corresponding Hearing Officer's Decision ("HOD"), and a certification form directly to the DCPS Office of General Counsel via email or mail.  *See DCPS Guidelines for the Payment of Attorney Fees in IDEA Matters, Office of General Counsel, Oct. 1, 2006*, attached as Exhibit 1.  Under these procedures, not only are plaintiffs not required to first submit their petitions to the Court, but rather they are advised to seek payment directly from DCPS.  DCPS then reviews the invoices submitted by prevailing plaintiffs and decides whether to pay or dispute the fees.

Given the number of IDEA Due Process Hearings conducted in the District of Columbia each year, it is necessary to have such a system in order to alleviate the Court's calendar.  If all plaintiffs in the District of Columbia were forced to bring fee petitions before the Court in order to be reimbursed for attorneys' fees after prevailing in a Due Process Hearing, the Court would be inundated with fee petitions.  In fact, these petitions would overwhelm the Court to the point that it would not be able to conduct any business.  In *Kaseman v. District of Columbia*, the Court addressed this exact issue and admonished DCPS for this same argument.  329 F. Supp. 2d 20 (2004) *rev'd on other grounds*, 444 F.3d 637 (D.C. Cir. 2006).  In *Kaseman,* as in the instant

---

the $4,000.00 fee cap.

case, DCPS argued that it refused to pay attorneys' fees invoices because the plaintiffs should petition the Court for attorneys' fees under IDEA. According to the Court:

> This suggestion is certainly troubling and short-sighted. DCPS itself acknowledges (see Opp. At 2 n. 3.) the extreme inefficiencies created when it fails to reasonably settle plaintiffs' fee requests. For, as DCPS concedes, "[i]t is grossly wasteful of the Court's time and resources when parties do not utilize DCPS as an initial screener. Ignoring DCPS payment processes literally invites hundreds of new IDEA fee processing cases where the Court will not be familiar with the substantive administrative proceedings on which the fee requests are based." (Id.). *See Kaseman* at 29 n. 8.

In the present case, the Plaintiffs acted in accordance with the DCPS policies for submitting attorneys' fees for reimbursement. DCPS, however, refused to pay some or all of the fees. In doing so, DCPS has demonstrated its intention to deny the Plaintiffs' of their reasonable fees to which they are entitled under IDEA. If *Gray*, on which the Defendant relies heavily, was followed to its logical conclusion, the District of Columbia would need to establish a separate court with the sole purpose of adjudicating fee petitions for reimbursement of attorneys' fees under IDEA. Thus, the Defendant has not shown that the Plaintiffs fail to state a claim upon which relief can be granted.

### III.    Plaintiffs do not fail to state a claim that the Fee Cap of Section 122 violates Due Process and Impermissibly limits the Court's authority to award fees.

The Defendant, in its motion, relies on Judge Urbina's Opinion in *Gray* that the fee cap does not violate due process and that it does not constitute an impermissible limit on the Court's authority to award fees. *See Gray*, Memorandum Opinion at 5. That decision, however, is being appealed by the Plaintiffs.

A.    **Recent changes in the law warrant the Court to reconsider the constitutionality of the fee cap.**

In *Calloway v. District of Columbia*, the Court held that the fee cap restricts the District's authority to pay attorneys' fees, not the Court's authority to award fees pursuant to IDEA.  216 F.3d 1 (D.C. Cir. 2000).  This decision contemplated that the fee cap would be a temporary solution in an effort to make funds available to address the DCPS special education problem.  In *Calloway*, the plaintiffs argued, however, that the fee cap would not in itself help to fix any problems because nothing requires DCPS to reallocate the savings from the cap to special education services.  *See Calloway*, at 8.  It has now been seven years since the cap was put in place and there is nothing to indicate that DCPS has made any changes to its special education system with the money it has saved by limiting attorneys' fees.[3]

Since the *Calloway* decision in 2000, many changes have occurred with respect to litigation under IDEA.  For example, the Supreme Court ruled in *Schaffer v. Weast* that the burden of proof in Due Process Hearings is on the party that brings the action, even when the parent is the party bringing the action.  546 U.S. 49 (2005).  This ruling has made litigation more complex and costly for parents, who are generally less sophisticated than and without the resources of the school.  In a subsequent case, the Supreme Court also ruled that school districts are not responsible for reimbursing parents prevailing at Due Process Hearings for their expert fees.  *See Arlington Central School District Board of Education v. Pearl Murphy*, 126 S. Ct. 2455 (2006).  These decisions have had a tremendously adverse effect on parents' ability to

---

[3]    There is no evidence that the money saved due to the attorneys' fees cap was applied to improve special education in the District of Columbia.  In fact, since the cap's inception, there has been an increase in Due Process hearings, indicating that the special education system within DCPS continues to operate in a defunct state. Additionally, just this year DCPS increased the number of Hearing Officers hired to preside over Due Process Hearings.

prevail in a Due Process Hearing across the country. The extra hurdle of not being reimbursed for attorneys' fees, however, leaves District of Columbia parents, in particular, virtually without redress when DCPS violates IDEA.

Due to the school-friendly climate created by recent IDEA cases, and that the Plaintiffs in the instant case suffer a depressed socio-economic status, the Plaintiffs are essentially deprived of equal protection. The rights under the Constitution protect all citizens the same. However, in this case, the Plaintiffs are being discriminated merely on the basis that they are citizens of the District of Columbia. While the Defendant has successfully argued in the past that this treatment is rationally related to a legitimate government purpose, time has proven this argument untrue. *See Calloway*, 216 F.3d 1, 5-10 (relying on *United States v. Cohen*, 236 U.S. App. D.C. 36, 733 F. 2d 128 (D.C. Cir. 1984) (*en banc*) for the proposition that District of Columbia. residents do not comprise a suspect class, and concluding that under rational-basis review the District of Columbia met its burden in showing that assisting disabled children is a legitimate governmental purpose and Congress rationally implemented the fee cap to help achieve this purpose).

While the District of Columbia. may have saved money by implementing the fee cap, that money has not been utilized to improve the special education system. Since the fee cap went into place, DCPS has continually failed to meet its special education system obligations under IDEA. Therefore the purpose of the cap, to improve the special education system in the District of Columbia, has not been furthered by its implementation and therefore the cap is no longer rationally related to a legitimate government interest. As such, the fee cap acts to deny equal protection to the citizens of the District of Columbia.

**B.     The Defendant's sole reliance on *Gray* does not prove that the Plaintiffs fail to state a claim upon which relief can be granted.**

In its Motion, the Defendant relies seemingly entirely on the Court's decision in *Gray*. The Defendant argues that the instant case is identical to *Gray*, and therefore the Court's reasoning in that case should be applied to this case.  The Court in *Gray* erred, however, when it failed to recognize that *Calloway* contemplated that the cap would be in place temporarily.  Since the cap has stayed in effect longer than expected, Congress is virtually paralyzed to remove it. Once the cap is removed the District will have to pay fees that have been awarded by the Court, but not paid because the cap was in effect.  This amount would surely put a severe economic strain on the District.   But by leaving the cap in place permanently, Congress is effectively usurping the power of the Court under IDEA to award attorneys' fees.

The appropriations act restricting the spending of the District of Columbia does not restrict the substantive authority of the federal Court to award attorneys' fees to prevailing parties under IDEA.  *See Calloway*, 216 F.3d 1.  The Court of Appeals has confirmed this holding in recent decisions such as *Jester v. District of Columbia*.  --- F.3d ---, 2007 WL 148830 (D.C. Cir. Jan 23, 2007).  The Court in *Jester* noted that the District was unable to pay any fees above the cap, but also reaffirmed that the Court does have the power to award such fees.  The Court ordered the District of Columbia to pay the full amount up to the cap, and the Court preserved a record of the full amount of fees due to the plaintiff. *Jester,* --- F.3d at 4.  The Court in *Gray*, therefore, erred in dismissing the plaintiffs' complaint because even though the Court may not have been able to order DCPS to pay the fees in excess of the cap, it certainly had the power to award the fees.  The Court in the instant case also retains such power.  Since the Court erred in

*Gray*, the Defendant's reliance on that decision is unpersuasive.  Additionally, the Defendant fails to mention that *Bowman*, which seeks payment of fees under the cap, is still pending.

**IV.    Mr. Houston and Ms. Dalton are Proper Parties in the Instant Case.**

   **A.    The Court Appointed Educational Advocates Meet the Definition of a "Parent" and thus have the Ability to Collect Attorneys' Fees in this Court.**

Pursuant to the IDEA, this Court may award attorneys' fees to "a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(1).  The federal regulations define the term "parent."

> (a) Parent means --
> (1) A biological or adoptive parent of a child;
> (2) A foster parent, unless State law, regulations, or contractual obligations with a State or local entity prohibit a foster parent from acting as a parent;
> (3) A guardian generally authorized to act as the child's parent, or authorized to make educational decisions for the child (but not the State if the child is a ward of the State);
> (4) An individual acting in the place of a biological or adoptive parent (including a grandparent, stepparent, or other relative) with whom the child lives, or an individual who is legally responsible for the child's welfare; or
> (5) A surrogate parent who has been appointed in accordance with § 300.519 or section 639(a)(5) of the Act.

> (b) (1) Except as provided in paragraph (b)(2) of this section, the biological or adoptive parent, when attempting to act as the parent under this part and when more than one party is qualified under paragraph (a) of this section to act as a parent, must be presumed to be the parent for purposes of this section unless the biological or adoptive parent does not have legal authority to make educational decisions for the child.

> (2) If a judicial decree or order identifies a specific person or persons under paragraphs (a)(1) through (4) of this section to act as the "parent" of a child or to make educational decisions on behalf of a child, then such person or persons shall be determined to be the "parent" for purposes of this section.

34 C.F.R. § 300.30.

Additionally, the regulations that address "Procedural Safeguards and Due Process Procedures for Parents and Children" and outline the procedures for filing due process complaints further define the criteria of a court appointed surrogate parent or guardian:

> (c) Wards of the State. In the case of a child who is a ward of the State, the surrogate parent alternatively may be appointed by the judge overseeing the child's case, provided that the surrogate meets the requirements in paragraphs (d)(2)(i) and (e) of this section.

> (d) Criteria for selection of surrogate parents.
> (1) The public agency may select a surrogate parent in any way permitted under State law.
> (2) Public agencies must ensure that a person selected as a surrogate parent–
> (i) Is not an employee of the SEA, the LEA, or any other agency that is involved in the education or care of the child;
> (ii) Has no personal or professional interest that conflicts with the interest of the child the surrogate parent represents; and
> (iii) Has knowledge and skills that ensure adequate representation of the child.

34 C.F.R. § 300.519.

Pursuant to 34 C.F.R. § 300.519, "The surrogate parent may represent the child in all matters relating to (1) [t]he identification, evaluation, and educational placement of the child; and (2) [t]he provision of FAPE to the child." 34 C.F.R. § 300.519(g). There is nothing in IDEA that prohibits a court appointed educational advocate from filing a due process complaint for a violation of FAPE or from later seeking an award of attorneys' fees if the advocate prevails at the due process hearing.

In the instant case, the District of Columbia Superior Court appointed counsel to serve as the educational advocates for Plaintiffs who are wards of the District of Columbia. The Superior Court issued orders which clearly defined the educational advocates' duties. These orders specifically state that counsel are charged with the duty to "facilitate and determine the

educational needs of the Respondent and to insure that he is properly placed." The orders further explain that counsel are "appointed as Guardians, Limited for Educational Purposes...in order to authorize testing, screening, and *whatever else is necessary* to perform the duties incidental to the appointment." (Emphasis added).

According to the plain text of the orders naming counsel as court appointed educational advocates, the advocates are deemed guardians for purposes of education for the student. The educational advocates clearly meet the definition of a parent pursuant to 34 C.F.R. § 300.30(a)(3) and (b)(2). Having prevailed at the administrative due process hearing and having met the definition of a "parent," the advocates are permitted to seek attorneys' fees pursuant to 34 C.F.R.§ 300.517(a)(1)(i).

**B.    A Court Appointed Educational Advocate May Act as Both Plaintiff and Counsel of Record without Violating D.C. Rule 3.7.**

The attorneys' roles as both Plaintiffs and counsel in the instant case does not violate Rule 3.7 of the District of Columbia Rules of Professional Conduct. Rule 3.7 states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>> (1) The testimony relates to an uncontested issue;
>> (2) The testimony relates to the nature and value of legal services rendered in the case; or
>> (3) Disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may not act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness if the other lawyer would be precluded from acting as advocate in the trial by Rule 1.7 or Rule 1.9. The provisions of this paragraph (b) do not apply if the lawyer who is appearing as an advocate is employed by, and appears on behalf of, a government agency.

12

This Court recently held that the District of Columbia Model Rules of Professional Conduct Rule 3.7 is not as rigid as the Defendant portrays it to be. *See United States of America, ex rel. Miller v. Bill Harbert International Construction, Inc., et al.*, No. 95-1231, 2007 U.S. Dist. LEXIS 18952 (D.D.C., Mar. 19, 2007). Referencing the comments to rule 3.7, this Court recognized that in order to determine whether an attorney is required to withdraw under the rule, the court must conduct a balancing test between the interests of the client and those of the opposing party. The inquiry of prejudice "depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses." *Miller v. Harbert.*, 2007 U.S. Dist. LEXIS 18952, at *21 (D.D.C., Mar. 19, 2007) *citing* D.C. Model Rules of Prof. Conduct R. 3.7 cmt. 4 (2007). In cases where plaintiffs' counsel may be required to testify, but the testimony will be limited to factual issues, the balancing of interests falls in the plaintiffs' favor. Accordingly, "It strains credulity at this point that innocuous fact-based evidence...would prejudice the defendant in any way." *Miller v. Harbert*, 2007 U.S. Dist. LEXIS 18952, at *21.

In the instant case, the possible testimony of counsel will not prejudice the Defendant. The only testimony that counsel may have to provide relates to factual matters regarding the legal services rendered in the underlying cases, and the fact that the Defendant owes attorneys' fees to the Plaintiffs. The testimony, therefore, will be limited to issues regarding the court appointments, authorization to bring due process complaints, or invoices submitted for attorneys' fees. Making this testimony even less prejudicial is the fact that the attorneys' fees owed to the Plaintiffs is an uncontested issue. The Defendant has not contested that the Plaintiffs were the

prevailing parties at the due process hearing, that the Plaintiffs submitted invoices to DCPS for payment, or that DCPS has not paid the invoices in full.

Attorneys for the Plaintiffs, in some cases, have been representing the Plaintiff students for many years, through multiple due process hearings. Thus, even if the Court finds that the Defendant may be slightly prejudiced by the testimony of counsel, any prejudice to the Defendant would pale in comparison to the prejudice to Plaintiffs in requiring that the attorneys withdraw from the case. *See Miller v. Harbert*, 2007 U.S. Dist. LEXIS 18952, at *21 (finding that requiring the withdrawal of attorneys who have been a part of the case for many years would have a "disastrous effect" on the plaintiffs). The Plaintiffs' attorneys understand the complexity and intricacies of special education law and have extensive experience in a field with which most attorneys are unfamiliar. This is the very reason why the Superior Court appointed counsel as educational advocates in the first place. To hold that the advocates are not permitted to recover fees, for taking the very actions necessary to carry out their duty to ensure that the Plaintiffs receive an appropriate education, would significantly impede the abilities of the Plaintiffs to receive effective representation.

C.  **Even if Rule 3.7 Excluded the Court Appointed Advocates from Acting as Both Plaintiffs and Counsel of Record, the Advocate Could Withdraw as Counsel, Allowing the Suit to Continue.**

Even if this Court determines that Mr. Houston's and Ms. Dalton's status as court appointed educational advocate warrants disqualification under Rule 3.7, the other attorney of record, Mr. Dalton, may proceed to trial. It has been established that, while Rule 3.7 may disqualify trial counsel, "it does not by its terms disqualify members of a potential lawyer-witness's firm from representing the client through pretrial motions." *Canfield v. Stone*, No. 93-

14

1022, 1993 U.S. Dist. LEXIS 15491, at *3 (D.D.C. 1993). Accordingly, Mr. Dalton is not

disqualified merely because he is a member of the same firm as Mr. Houston and Ms. Dalton,

and therefore he is permitted to proceed with pretrial motions.

Additionally, pursuant to Rule 3.7(b), Mr. Houston and Ms. Dalton would not be

precluded from acting as advocate in the trial by Rule 1.7 or Rule 1.9, which lay out the conflict

of interest standard. In this case, there exists no conflict of interest.

As stated above, the attorneys in this case have represented some of the Plaintiffs for

many years, and the Court "should refrain from prohibiting clients from seeking representation

from lawyers or firms who have served them well in the past unless there is good cause to do so."

*Canfield*, 1993 U.S. Dist. LEXIS 15491, at *4 (D.D.C. 1993). Furthermore, this jurisdiction has

made the distinction between representation at trial and representation before trial, where no

testimony is taken. *See id.* at *3; *Moyer v. 1330 Nineteenth Street Corp.,* 597 F.Supp 14, 17

(D.D.C. 1984). Since it is unclear at this time whether a trial will be necessary, and whether Mr.

Houston and Ms. Dalton would need to testify, it is premature to bar Mr. Houston and Ms.

Dalton, or any other attorneys of record, at this stage of the litigation.

    D.    **The Doctrine of Estoppel Bars the Defendant from Arguing that Court Appointed Educational Advocates Cannot Collect Attorneys' Fees Pursuant to IDEA Claims**.

The Defendant is barred by the doctrine of estoppel from arguing that the educational

advocates cannot bring IDEA claims and seek attorneys' fees, because the Defendant has acted in

direct contradiction to this assertion in past dealings with the Plaintiffs.

    The doctrine of judicial estoppel is that where a party successfully urges a
    particular position in a legal proceeding, it is estopped from taking a contrary

15

> position in a subsequent proceeding where its interests have changed. *Davis v.*
> *Wakelee*, 156 U.S. 680, 689, 39 L. Ed. 578, 15 S. Ct. 555 (1895); *Wang Lab., Inc.*
> *v. Applied Computer Sciences, Inc*., 958 F.2d 355, 358 (Fed. Cir. 1992). Judicial
> estoppel is designed to prevent the perversion of the judicial process and, as such,
> is intended to protect the courts rather than the litigants.

*Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996).

Members of the undersigned counsel's firm have acted as court appointed educational advocates for many years. In carrying out their court appointed duties, these counsel have brought IDEA due process complaints against DCPS. In all of the due process hearings underlying the instant Complaint, the Defendant never once raised the issue that the court appointed advocates did not have the authority to file a due process complaint on behalf of the wards that they represent. In fact, it is the practice of the Defendant at the due process hearing to request a copy of the court order appointing counsel as educational advocate, and then proceeding with the due process hearing without objection regarding the authority of the court appointed advocate to bring the claim. The Defendant is estopped from taking this position now simply because it suits their interests to do so.

The United States Court of Appeals for the District of Columbia Circuit has also previously stated,

> [I]n determining whether to interpose the bar of equitable estoppel, [the court]
> must consider all the factors of the particular case at bar, the parties involved, the
> effect of the ultimate decision on third parties who are not before the court, the
> nature of the rights sought to be vindicated and, as well, public policy as
> expressed by pertinent statutes and prior judicial declarations.

*Sears v. Sears*, 293 F.2d 884, 887 (D.C. Cir. 1961).

When counsel for Plaintiffs submitted invoices for attorneys' fees to DCPS for payment of the court appointed educational advocates' services, DCPS has never refused payment based

on the argument that it is improper for court appointed educational advocates to collect attorneys'

fees.  DCPS has even submitted partial payment on the invoices which are the subject of the

Amended Complaint.  *See* Amended Complaint ¶¶ 12-15, 24-27, 36-39, 52-55, 76-79, 84-87.

The Plaintiffs' are now seeking the remainder of the attorneys' fees owed to them.  The

Defendant cannot now argue, after paying a portion of the Plaintiffs' fees, that Plaintiffs' are due

no fees at all.  It is against public policy and will have a detrimental effect on other wards of the

District of Columbia if this Court were to hold that the advocates are not permitted to recover

fees.  Such a holding will significantly impede the abilities of the Plaintiffs and other wards to

receive effective representation in pursuing claims under IDEA.

## CONCLUSION

For the reasons set forth above, the Plaintiffs have stated a claim upon which relief can

be granted.  Nowhere in the record does the Defendant challenge the Plaintiffs' prevailing party

status or that the Plaintiffs are owed attorneys' fees.  Plaintiffs are prevailing parties and can thus

seek attorney fees from the Court.  *See* IDEA, 20 U.S.C. § 1415(i)(3)(B).  The Plaintiffs may also

seek an award of attorneys' fees above the statutory cap.  *See Calloway,* 216 F.3d 1; *see also*

*Alfonso v. District of Columbia*, 464 F. Supp. 2d 1 (2006); *and Jester*, --- F.3d —.  Finally, the

Plaintiffs are challenging the constitutionality of the statutory fee cap.  Viewing the facts in the

light most favorable to the Plaintiffs, the Defendants have failed to show that no set of facts exist

that would justify relief.  *See Kowal*,16 F.3d 1271.  Therefore, this Court should not dismiss the

Plaintiffs' claims.  Thus, Plaintiffs request that this Court deny the Defendant's Motion to

Dismiss.

DATE: May 25, 2007                        Respectfully submitted,
                                          Counsel for Plaintiffs


_____/s/_____
Paul S. Dalton, Esq. (Bar. No. 439118)
DALTON, DALTON & HOUSTON, P.C.

_____/s/_____
Ellen Douglass Dalton, Esq. (Bar. No. 411612)
DALTON, DALTON & HOUSTON, P.C.

_____/s/_____
William E. Houston, Esq. (Bar. No. 450223)
DALTON, DALTON & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, VA 22314
(703) 739-4300
(703)-739-2323 (fax)


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing document was filed electronically,
on this 25th day of May, 2007.


_____/s/_____
PAUL S. DALTON, Esq.
Counsel for the Plaintiffs

18



DISTRICT OF COLUMBIA
PUBLIC SCHOOLS

**Office of the Superintendent**
Office of the General Counsel
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002-4232
202-442-5000, fax: 202-442-5097
www.k12.dc.us

October 1, 2006

TO:          MEMBERS OF THE SPECIAL EDUCATION BAR

FROM:        Abbey G. Hairston
             General Counsel

RE:          DCPS GUIDELINES FOR THE PAYMENT OF ATTORNEY FEES IN IDEA MATTERS

The following are the DCPS guidelines for the payment of attorney and expert fees in IDEA matters. These guidelines will supersede those issued on February 1, 2005. These guidelines apply to any invoices received on or after October 1, 2006.

1.     **Submission of Attorney Fee Invoices – What to Submit**

       a)     **Copy of Final HOD or fully executed settlement agreement that establishes the parent as a prevailing party.**

       b)     **Itemized Invoiced for each Final HOD or SA**. A separate itemized invoice must be submitted for each Final HOD or SA. Please do not submit multiple HODs with a single combined invoice or it will be returned to you for resubmission.

              *For example, if you have a Final HOD dated 1/4/04 and another Final HOD for the same student dated 2/15/04 you cannot submit one invoice that covers both HODs.*

              Please assign your invoice an **invoice number** for easier tracking.

       c)     **Certification.** All requests for payment submitted to DCPS must include a fully completed, executed copy of the attached certification form in order to be processed. The certification must be signed by attorney submitting the invoice. Note: The current certification form includes information required for processing ie. Hearing Request Filing Date and therefore use of outdated forms is not acceptable. **Please discard all outdated forms and use only the attached Certification Form.**

2.     **Guidelines for Invoices**
       Please comply with the following guidelines in preparing your invoices. Failure to comply with these guidelines will result in delay in processing your invoices and may result in the invoices either being returned to you for further information or denied:

       a)     Individual attorney, paralegal, and administrative staff's hourly rates must be included.

**EXHIBIT**

**1**

b)    If you invoice for attendance at an MDT/IEP meeting, the attached HOD or SA must authorize that invoiced meeting. If not, the invoiced time WILL BE DENIED.

c)    Only one lawyer for each party shall be compensated for client and third party conferences.

d)    Only one lawyer for each party shall be compensated for attending due process hearings. If, however, a junior lawyer is present at trial primarily for the purpose of organizing documents but takes a minor witness for educational purposes, consideration should be given to billing her time at a paralegal's rate.

e)    Generally, only one lawyer is to be compensated for intra-office conferences. If during such a conference one lawyer is seeking the advice of another lawyer, the time may be charges at the rate of the more senior lawyer.

f)    Each entry must include a specific description of the services performed, the time increment, in 1/10 hour increments, hourly rate and total amount billed for that entry. While exhaustive detail or privileged information of the attorney involved is not required, billing entries should provide a reasonable level of information instead of simple repetition, for example:

| | | | |
|---|---|---|---|
| Prepare and file hearing Request | .50 [Attorney/Paraleagal Name] | $200/hr | $100.00 |
| Legal Research on issue of Stay Put | 1 [Attorney/Paraleagal Name] | $200/hr | $200.00 |

g)    The following are *examples* of descriptions that lack specificity to evaluate the reasonableness of services, the relationship to the administrative adjudication, and the hours expended on a given matter, and therefore may be denied:

"Review of Correspondence"
"Research"
"Conference with Client"
"Hearing Preparation"
"Bi-weekly case review"
"Preparation of brief"
"Review of File"

h)    Your invoice must provide a total number of hours, in 1/10 hour increments, and amount owed for each person for whom you are billing *(this can be done at the end of the invoice, or a separate cover letter)*. For example:

| | | | |
|---|---|---|---|
| Attorney XYZ | 5.10hrs | $200/hr | $1,020.00 |
| Attorney ABC | 2.0hrs | $200/hr | $ 400.00 |
| Paralegal DEF | 2.0hrs | $100/hr | $ 200.00 |
| Advocate GHI | 4.0hrs | $100/hr | $ 400.00 |
| **Total Attorney Fees** | | | **$2,020.00** |

i)    **Filing of Hearing Request Date.**
Your invoice and Attorney Fee Certification Form should include the date on which you filed the hearing request whether included in the HOD or not. All submissions not including the filing date

will have fees considered only prior to 30 days of the Date of the Hearing Officers Determination. All other fees will be considered remote.

j)    **Out-of-pocket expenses and costs.**
When billing for expenses such as photocopies, provide a statement of the basis for the rate billed (e.g. per-page cost for photocopies). Failure to include the "per-page cost" may result in reduction or denial of those out-of-pocket expenses and costs.

3.    **Where to Submit Invoices**

a)    For the most expeditious processing, invoices can be submitted electronically, via email to:

**OGCATTORNEYFEE@k12.dc.us**

You may electronically submit invoices, signed certification and supporting documents in the following formats: MS Excel, ACCESS or PDF.

b)    Invoices and the accompanying documents can also be mailed or delivered to:

**District of Columbia Public Schools**
**Office of the General Counsel**
**ATTN: Attorney Fee Processing**
**825 North Capitol St., N.E. 9th Floor**
**Washington, D.C. 20002**

4.    **Hourly Rate.** DCPS will pay an attorney's <u>reasonable</u> hourly rate, taking into account the attorney's experience, skill and/or reputation, prevailing market rates in the community for similar services by lawyers, and the <u>complexity of the issues raised in the case</u>. DCPS will use the following Guidelines in determining the reasonableness of the lawyer's and paralegal's hourly rate:

**Guidelines regarding hourly rates.**
a. Lawyers admitted to the bar for less than five years:  $135-170
b. Lawyers admitted to the bar for five to eight years:  $150-225
c. Lawyers admitted to the bar for more than eight years:  $200-275
d. Paralegals and law clerks:  $90

Please complete and return the attached, **Attorney Information Sheet** to assure you are credited with an appropriate hourly rate. (You should update the Attorney Information Sheet annually). Each attorney invoice must include the hourly rate for the attorney and for any other staff member for whom you are billing.

5.    **Reasonable Costs.** DCPS will pay reasonable attorney "costs" as enumerated in 28 U.S.C. § 1920:

**Out-of-Pocket Expenses.** DCPS will reimburse an attorney's out-of pocket expenses that are incidental and necessary expenses incurred in furnishing effective and competent representation and those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services. These expenses must be ***reasonable and well-documented***:

a)    Photo-copying
b)    Messenger/Express Mail

c)     Transportation costs and parking for hearings
d)     Postage
e)     Long Distance Telephone calls
Note: DCPS will not pay travel time to and from meetings, hearings and/or schools.

6.     **Reasonable Attorney Fees.** The IDEA provides that DCPS pay reasonable attorney fees and costs. Invoices must be sufficiently detailed to permit an independent determination whether or not the hours claimed are justified. DCPS will pay reasonable time increments for services related to the practice of law, such as:

a)     Preparing or drafting legal opinions;
b)     Appearing or acting as an attorney before a hearing officer;
c)     Preparation of claims, demands, or other written documents containing legal argument;
d)     Proving legal advice and counsel to a client related to the underlying administrative action.
e)     Fees billed 30 days prior to the hearing request date will be considered remote or unrelated.

**Non-Professional Services.** DCPS will not pay for services of a nonprofessional, non-legal nature at the applicable attorney hourly rate. Such services may be billed at a lower paralegal or legal assistant rate. *Examples* of nonprofessional services include, but are not limited to:

a)     Opening Files;
b)     Transmission of Documents;
c)     Assembly/preparation of bill;
d)     File Maintenance.

7.     **Payment of Expert Fees**

- **Consistent with recent judicial decisions in <u>Arlington Central School District Board of Education v. Murphy, et vir.(Supreme Court)</u> and <u>Goldring v. D.C.(D.C. Cir.)</u>, DCPS will <u>NOT</u> pay the costs incurred for expert services in connection with an administrative due process hearing complaint, where the parent is determined to be a prevailing party.**

8.     **Payment of Advocate Fees**

- Advocates who are hired for the purposes of providing testimony are reimbursable as out-of-pocket expenses of the attorney, subject to the fee cap where the parent is determined to be a prevailing party.

9.     **Timeline for Submission of Invoices**.

Pursuant to 5 DCMR §3024.1:
*All requests for attorney's fees by parents who have prevailed against DCPS in actions brought under the IDEA shall be submitted within forty-five (45) days of the issuance of the hearing decision in which the child, parent, or guardian prevailed or execution of a settlement agreement requiring the payment of such fees. Failure to do so may result in delayed processing. If an attorney incurs addition expenses pursuant to a Final HOD or SA, the attorney should submit a supplemental invoice for payment of the fees. If the attorney has been paid up to the statutory cap, no addition fee will be approved.*

DCPS will make reasonable efforts to process your invoice within **60 days** of receipt. If you do not receive an acknowledgment that your invoice has been processed within **90 days** of submission, you may consider your invoice as denied.

10.    Obtaining a Status on Pending Invoices

- Please allow 60 days from submission of your invoices to receive payment or confirmation of processing.

- In order to find out the status of a pending invoice, please send and email to **OGCATTORNEYFEE@k12.dc.us.** Email is the preferred method of communication; you will receive a response within 48 hours. Please avoid calling the Office for a status; time spent on the phone detracts from time needed to process invoices.

- If you want to confirm that your invoice was received and you are unable to utilize email, please call the main number at (202) 442-5000 – the person answering the phone is able to access our attorney fee log and confirm receipt.

11.    Payment of Invoices

- Once your invoices are approved for payment by OGC, you will receive by fax or email, a copy of the fee processing sheet and the dispute sheet, if applicable. This sheet will indicate the date your invoice was forwarded to Finance for payment.

- Once your approved invoice is sent to Budget and Finance for payment, please allow 2-3 weeks to receive the payment.

- If you do not receive a check at the end of three weeks, please call the Office of Budget and Finance for a status at 442-5330. The Office of General Counsel does not have access to the payment information.

- To avoid delays in payment, please make sure that an updated Form W9 has been filed with DCPS.

12.    Dispute of Denial of Payment

- If you disagree with DCPS' denial of a charge on a specific invoice, you may request that DCPS reconsider its denial and provide additional supporting information within 30 days of receipt of the denial. For example, if a time entry charge was denied because an insufficient description was provided (see Section 2(c) above), you may submit an expanded description of the service provided and request payment. DCPS will provide a final agency response to your dispute within 20 days.



## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

**Office of the Superintendent**
Office of the General Counsel
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002-4232
202-442-5000        Fax: 202-442-5098
www.k12.dc.us

## APPLICATION FOR PAYMENT OF ATTORNEY FEES AND COSTS
## PURSUANT TO THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT

1.  **Attorney Information**
    Law Firm:                          _____
    Attorney:                          _____
    Federal Tax ID No:                 _____
    D.C. Bar No:                       _____

2.  **Student Information**
    Name:                              _____
    DOB:                               _____
    Date Hearing Request Filed:        _____
    Date(s) of Hearing:                _____
    Date of Determination (HOD/SA)     _____
    Parent/Guardian Name:              _____
    Parent/Guardian Address:           _____

3.  **Invoice Information**
    Invoice Number:                    _____
    Date Request Submitted:            _____
    Date(s) of Services Rendered:      _____
    Attorney Hourly Rate:          $ _____
    Total Attorney Fees:           $ _____
    Total Attorney Costs:          $ _____
    Total Experts:                 $ _____
    Total Invoice:                 $ _____

4.  **Certification (must be signed by principal attorney)**

    I certify that all of the following statements are true and correct:

    - All services listed on the enclosed invoices were actually performed;
    - The entire amount requested on the enclosed invoice for payment of costs and expenses represents the actual amount of costs and expenses incurred;
    - The District of Columbia Public Schools is the sole entity from which payment of the fees, costs, and expenses itemized on the enclosed invoice is requested;
    - No attorney or law firm who either (1) provides services listed on the enclosed invoice; or (2) will benefit from any monies paid as a result of the submission of the enclosed invoice, has a pecuniary interest, either through an attorney, officer, or employee of the firm, in any special education diagnostic services, schools, or other special education service providers;
    - I understand that the making of a false statement to an agency of the D.C. Government is punishable by criminal penalties pursuant to D.C. Code § 22-2405.

_____          _____
Signature                            Date

*Revised Nov. 2004*



DISTRICT OF COLUMBIA
PUBLIC SCHOOLS

Office of the Superintendent
Office of the General Counsel
825 North Capitol Street, N.E., 9ᵗʰ Floor
Washington, D.C. 20002-4232
202-442-5000       Fax: 202-442-5098
www.k12.dc.us

## SPECIAL EDUCATION ATTORNEY INFORMATION

Attorney Name  _____

Law Firm  _____

(please submit a separate form for each attorney in firm)

Federal Tax ID+  _____

Billing Address  _____

_____

_____

Phone Number  _____

Fax Number  _____

Email  _____

Bar Number  _____

State of Admission  _____     Year of Admission  _____

Years of Legal Practice in Special Education Law⁎  _____

⁎This information will be used in determining the reasonable hourly rate. You may attach a resume with this form.
+The Tax ID number is necessary in order to receive any payments from DCPS. Please mail or fax this form to the address/number listed above. Please complete the form even if you have submitted one in the past so that we may update our records.

Received in OGC _____ / _____ /

*Revised Nov. 2004*

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a **nonresident alien or a foreign entity** not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 30% of such payments (29% after December 31, 2003; 28% after December 31, 2005). This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part II instructions on page 4 for details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate **Instructions for the Requester of Form W-9.**

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your **individual** name as shown on your social security card on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

**Other entities.** Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note:** *You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).*

### Exempt From Backup Withholding

If you are exempt, enter your name as described above and check the appropriate box for your status, then check the "Exempt from backup withholding" box in the line following the business name, sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note:** *If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.*

**Exempt payees.** Backup withholding is **not required** on any payments made to the following payees:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2);

2. The United States or any of its agencies or instrumentalities;

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities;

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities; or

5. An international organization or any of its agencies or instrumentalities.

Other payees that **may be exempt** from backup withholding include:

6. A corporation;

7. A foreign central bank of issue;

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States;

Form W-9 (Rev. 1-2003)

9. A futures commission merchant registered with the Commodity Futures Trading Commission;

10. A real estate investment trust;

11. An entity registered at all times during the tax year under the Investment Company Act of 1940;

12. A common trust fund operated by a bank under section 584(a);

13. A financial institution;

14. A middleman known in the investment community as a nominee or custodian; or

15. A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt recipients listed above, 1 through 15.

| If the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt recipients except for 9 |
| Broker transactions | Exempt recipients 1 through 13. Also, a person registered under the Investment Advisers Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt recipients 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt recipients 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation) and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees; and payments for services paid by a Federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see **How to get a TIN** below.

If you are a **sole proprietor** and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-owner **LLC** that is disregarded as an entity separate from its owner (see **Limited liability company (LLC)** on page 2), enter your SSN (or EIN, if you have one). If the LLC is a corporation, partnership, etc., enter the entity's EIN.

**Note:** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get **Form SS-5,** Application for a Social Security Card, from your local Social Security Administration office or get this form on-line at **www.ssa.gov/online/ss5.html.** You may also get this form by calling 1-800-772-1213. Use **Form W-7,** Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or **Form SS-4,** Application for Employer Identification Number, to apply for an EIN. You can get Forms W-7 and SS-4 from the IRS by calling 1-800-TAX-FORM (1-800-829-3676) or from the IRS Web Site at **www.irs.gov.**

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.

Form W-9 (Rev. 1-2003)

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 3, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt recipients, see **Exempt from backup withholding** on page 2.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

**1. Interest, dividend, and broker exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA or Archer MSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or single-owner LLC | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship or single-owner LLC | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate or LLC electing corporate status on Form 8832 | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership or multi-member LLC | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name, but you may also enter your business or "DBA" name. You may use either your SSN or EIN (if you have one).

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

**Note:** *If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.*

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA or Archer MSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, or to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 30% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.




## GOVERNMENT OF THE DISTRICT
## OF COLUMBIA

Page 1 of 2

## SUPPLIER/VENDOR INFORMATION FORM

| New Vendor [ ] | CHECK |
|---|---|
| New Payment/Address [ ] | ONLY |
| New Business Address [ ] | ONE |
| Deactivation [ ] | |

**Business Entity**

████████ Y/N

Supplier/Vendor
Type: _____
(From Page 2)

Ownership Code: _____
(From Page 2)

1. As information appears in official records:  (ALL FIELDS MUST BE COMPLETED)

1099 Y/N
see 1099 requirements

Federal Taxpayer ID _____     Social Security Number _____

Corporate Name: _____
Suite/Room: _____
Street: _____
City: _____  State: _____  Zip: _____
Telephone _____  Contact _____
Fax: _____

**Individual**

████████ Y/N

Supplier/Vendor
Type: _____
(From Page 2)

Ownership Code: _____
(From Page 2)

2. In an individual rather than a business entity:  (ALL FIELDS MUST BE COMPLETED)

_____     _____
Social Security Number

Individuals Name: _____
Suite/Room: _____
Street: _____
City: _____  State: _____  Zip: _____
Telephone _____
Fax: _____

**Payment Address**

One Time Payment: [ ]

3. To which all payments will be sent:
Suite/Room: _____
Street: _____
City: _____  State: _____  Zip: _____
Telephone _____

**Additional Payment Address**

4. New additional payment address:
Suite/Room: _____
Street: _____
City: _____  State: _____  Zip: _____
Telephone _____

**Authorization**

Date Faxed __/__/__

URGENT: Court Order: [ ]

DCMR 1710 Emergency [ ]

5. INFORMATION PROVIDED BY: _____
Print or Type Name of Requestor

Title _____  Phone _____  Fax _____  3 digit Agency Code

Agency Chief Contracting Officer (ACCO) _____  Date _____

Agency Chief Financial Officer (ACFO) _____  Date _____

FMS Form 710R (REV. 3/02)

[OVER]

# VENDOR INFORMATION FORM

| FAX OR DELIVER TO: |
| --- |
| DIVISION OF VENDOR ENTRIES |
| 810 FIRST STREET, N.E. |
| SUITE 200 |
| WASHINGTON, DC 20002 |
| FAX: (202) 442-8217 |
| For Assistance, call Division of Vendor Entries at (202) 442-8269 |

| Vendor Type | 6. (Please circle one): |
| --- | --- |
| | 1. Employee |
| | 2. Federal Agency |
| | 3. State Agency |
| | 4. Local Government |
| | 5. Vendor-business |
| | 6. Vendor-Individual |
| | 7. Other |
| Ownership Code | 7. (Please circle one): |
| | A. State Corporation |
| | C. Professional Corporation |
| | E. State Employee |
| | F. Financial Institution |
| | G. Government Entity |
| | I. Individual Recipient |
| | L. Local Small Disadvantage Business Enterprises |
| | N. Medical Corporation |
| | O. Out of State Corporation |
| | P. Professional Association |
| | R. Foreign |
| | S. Sole Ownership |
| | T. Partnership |

FMS Form 710R (REV. 3/02)



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of the Superintendent**
Office of the General Counsel
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002-4232
202-442-5000       Fax: 202-442-5098
www.k12.dc.us

## SPECIAL EDUCATION EXPERT INFORMATION

*This form is to be filled out by Experts who are requesting payment directly from DCPS for testimony in an administrative due process hearing where the parent was the prevailing party. Experts must also complete a Form W9 annually.*

Expert Name  _____

Agency Name  _____

Federal Tax ID+  _____

Billing Address  _____

_____

_____

Phone Number  _____

Fax Number  _____

Email  _____

Area of Expertise  _____

_____

Relevant License Held/Year Issued  _____ / _____

Name of Licensing Agency  _____

Relevant Degree Held/Year Issued  _____ / _____

Name of College/University
Issuing Degree  _____

Years of Practice in Relevant Area  _____

You may attach a resume with this form.  +The Tax ID number is necessary in order to receive any payments from DCPS. Please mail or fax this form to the address/number listed above. Please complete the form even if you have submitted one in the past so that we may update our records.

Received in OGC  _____ / _____

Revised Nov. 2004

Form **W-9**
(Rev. January 2003)
Department of the Treasury
Internal Revenue Service

### Request for Taxpayer
### Identification Number and Certification

Give form to the
requester. Do not
send to the IRS.

| | |
|---|---|
| **Name** | |
| **Business name, if different from above** | |
| **Check appropriate box:** ☐ Individual/ Sole proprietor ☐ Corporation ☐ Partnership ☐ Other ▶ ................. | ☐ Exempt from backup withholding |
| **Address (number, street, and apt. or suite no.)** | Requester's name and address (optional) |
| **City, state, and ZIP code** | |
| **List account number(s) here (optional)** | |

*Print or type*
*See Specific Instructions on page 2.*

### Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see **How to get a TIN** on page 3.

**Note:** *If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.*

**Social security number**
| | | | | | | | |
|--|--|--|--|--|--|--|--|

or

**Employer identification number**
| | | | | | | |
|--|--|--|--|--|--|--|

### Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: **(a)** I am exempt from backup withholding, or **(b)** I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or **(c)** the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

| Sign Here | Signature of U.S. person ▶ | Date ▶ |
|---|---|---|

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

**1.** Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

**2.** Certify that you are not subject to backup withholding, or

**3.** Claim exemption from backup withholding if you are a U.S. exempt payee.

**Note:** *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**Foreign person.** If you are a foreign person, use the appropriate Form W-8 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

**1.** The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

**2.** The treaty article addressing the income.

**3.** The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

**4.** The type and amount of income that qualifies for the exemption from tax.

**5.** Sufficient facts to justify the exemption from tax under the terms of the treaty article.

Cat. No. 10231X

Form **W-9** (Rev. 1-2003)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RISA BILLUPS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 07-0367(JR) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Upon consideration of the Defendant's Motion to Dismiss and Plaintiffs' Opposition

thereto, it is hereby

ORDERED that the Defendant's Motion to Dismiss is DENIED.


_____                    _____
Date                                                          James Robertson
                                                             United States District Court Judge