UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RISA BILLUPS, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 07-0367 |
| | : | (JR) |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Comes now defendant, District of Columbia, by counsel, and replies to plaintiffs' Opposition to defendant's Motion to Dismiss as follows:

**I.      Plaintiffs Fail to State a Claim With Regard to Attorneys' Fees and a Violation of the IDEIA.**

Plaintiffs claim that they have been denied rights under the IDEIA because DCPS "refused to pay some or all the fees" submitted by plaintiffs' counsel for payment. (Opp. at 6)  They misconstrue defendant's arguments as to why their claim does not indicate a violation of the IDEIA.  While plaintiffs have the right to seek reimbursement from DCPS when they are a prevailing party, the fact that plaintiffs did not receive all the money they sought, does not mean that DCPS improperly reduced the amount of the requested fees.  Nor is there any indication in plaintiffs' Complaint or Opposition that DCPS agreed to pay a certain amount and reneged on their agreement.  Lastly, while defendant is not suggesting that the IDEIA bars plaintiffs from first applying to DCPS for fees—and this Court, in the exercise of its discretion has in other cases required presentation of fee requests to DCPS first—the statute does not require an initial DCPS

action. Ultimately under the statute, only the court, and not the defendant, may award the plaintiffs reasonable attorneys' fees. 20 U.S.C. Sec. 1415(1)(3)(B). Had the court ordered defendants to pay plaintiffs' attorneys' fees and defendant failed to pay, then plaintiffs would have a proper claim. However, that is not the case here, and accordingly, plaintiffs' claim must be dismissed.

      **II.**         **Plaintiffs Fail To State a Claim That the Fee Cap Violates Due Process and Impermissibly Limits the Court's Authority to Award Fees.**

Plaintiffs assert that defendant relied solely on a recent decision by the honorable Judge Urbina, *Gray v. District of Columbia,* Civ. No. 06-0144 (D.D.C.), in arguing why the section 130 fee cap does not violate plaintiffs' due process rights. Apparently, because plaintiffs are appealing that decision, they believe that the decision has no validity. However, defendant did not rely solely on Judge Urbina's decision, but also on the law on which he based his decision, specifically, *Calloway v. District of Columbia*, 216 F.3d 1 (D.C. Cir. 2000).

In *Calloway*, the court entertained and rejected the same arguments as are now being presented.[1] In *Calloway*, as here, plaintiffs alleged that the section 130 fee cap violated their due process rights by "prevent[ing] them from retaining qualified legal counsel…." leaving them "powerless to enforce their IDEA rights…." *Calloway*, 216 F.3d at 5-6. Plaintiffs further argued in *Calloway,* as they do here, that "the Plaintiffs are being discriminated merely on the basis that they are citizens of the District of Columbia." (Opp. at 8) (*Calloway* at 6) However, both the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit rejected plaintiffs' challenges to section 130, as this Court must also.

---

[1] Plaintiffs' counsel, Paul Dalton, participated in the brief writing for plaintiffs' appeal in *Calloway.*

2

The Court of Appeals also took into account, and rejected, plaintiffs' argument in *Calloway*, that the section 130 fee cap would not benefit the special education system. "Whatever the doubts about section 130, 'rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Calloway*, 216 F.3d at 8, citing *Heller v. Doe,* 509 U.S. 312, 318 (1993).

Lastly, the court in *Calloway* also addressed plaintiffs' argument that "Congress is effectively usurping the power of the Court under IDEA to award attorneys' fees," (Opp. at 9).

> In view of the "very strong presumption" that appropriation acts do no amend substantive law, we face a straightforward question of statutory construction: has Congress unambiguously expressed an intent to limit court authority to award fees under IDEA?  When Congress wants to use an appropriations act to limit court authority, it knows precisely how to do so.  For example, section 311 of the 2000 Appropriations Act says, "section 5 of the Y2K Act… is amended" to state that "punitive damages in a Y2K action may not be awarded against an institution of higher education."  Section 311, Consolidated Appropriations Act, 2000, Pub. L. 106-113, 113 Stat. 1501, 1537 (Nov. 29, 1999).  Section 130 contains no similar limiting language.

*Calloway*, 216 F.3d at 5-6

### III. Court Appointed Education Advocates are Not "Parents" pursuant to the IDEIA and Do Not Have the Ability to Collect Attorneys' Fees in This Court.

Plaintiffs claim that despite only being appointed as "educational advocates" by the D.C. Superior Court, Family Division, to represent individual children in proceedings in that court, they nonetheless, meet the definition of "parent" under the Individuals With Disabilities Education Improvement Act of 2004 (" IDEIA"), 20 U.S.C. Sec. 1400 *et seq.*, for the purpose of collecting attorneys' fees in this Court.  (Supplemental Brief at 2-4) Plaintiffs are mistaken.

20 U.S.C. 1401 (23) defines a "parent" as follows:

(A) a natural, adoptive, or foster parent of a child (unless a foster parent is prohibited by State law from serving as a parent):

(B) a guardian (but not the State if the child is a ward of the State);

(C) an individual acting in the place of a natural or adoptive parent (including a grandparent, stepparent, or other relative) with whom the child lives, or an individual who is legally responsible for the child's welfare; or

(D) except as used in sections 615(b)(2) and 639(a)(5), an individual assigned under either of those sections to be a surrogate parent.

Plaintiffs appear to argue that they meet the definition of "surrogate parent" though they fail to explain how. While it is true that "in the case of a child who is a ward of the State, [a] surrogate parent [] may be appointed by the judge overseeing the child's case…" or by a public agency, (34 CFR Sec. 300.519) there is no indication here that plaintiffs were appointed as anything other than "educational advocates" by a DC Superior Court Judge. Nor have plaintiffs presented any evidence that any agency appointed them as a surrogate parent to any of the minor plaintiffs. Plaintiffs' counsel merely reiterate that the "District of Columbia Superior Court appointed counsel to serve as the educational advocates for Plaintiffs who are wards of the District of Columbia…" and that the orders appointing them stated that their appointment was "Limited for Educational Purposes…." (Opp. at 11)

While plaintiffs cite 34 CFR Sec. 300.30 to bolster their argument that they qualify as "parents," the mere fact that they were appointed educational advocates does not make them "guardians' as the term is used in the federal regulation. In a Family Court proceeding involving a minor child who is a ward of the District of Columbia, the court appoints a *guardian ad litem*[2] to represent the interests of the child. It is this

---

[2] Plaintiffs do not dispute that the DC Superior Court appointed guardians <u>ad litem</u> for each of the minor wards of the District named here.

person, if any, who would be "authorized to act as the child's parent," representing the best interests of the child. (34 CFR Sec. 300.30(a)(3)).  There is no indication in either the IDEIA or the federal regulations, that a court is empowered to appoint two persons, both of whom would act as the "parent."  Nor can plaintiffs' counsel be considered the minors' "guardian" in any legally consequential sense here. CFSA is the legal guardian of the minor plaintiffs who are wards of the District of Columbia.

Nonetheless, should this Court conclude that educational advocates meet the definition of "parent," pursuant to the IDEIA, plaintiffs' counsel would still be ineligible to collect attorneys' fees in this Court. Case law is clear that attorneys' fees may not be awarded for legal service performed by an attorney/parent who obtains special education benefits for his/her child under the IDEIA. *Woodside v. The School District of Philadelphia Board of Education,* 248 F.3d 129, 131 (3rd Cir 2001); *Doe v. Board of Education of Baltimore County,* 165 F.3d 260, 264 (4th Cir. 1998), cert. denied, 526 U.S. 1159 (1999).  *See also Kay v. Ehrler,* 499 U.S. 432 (1991).

**IV.      A Court Appointed Educational Advocate is Prohibited From Acting as Both Plaintiff and Counsel of Record Pursuant to D.C. Rule 3.7.**

Plaintiffs' counsel allege that they should be permitted to act as both plaintiffs--parents and next friend of a number of wards of the District of Columbia -- and counsel of record in the instant case.  In their Opposition they cite the case of *Miller v. Harbert,* 2007 U.S. Dist. LEXIS 18952 (D.D.C., March 19, 2007), in support of their proposition. (Opp. at 13) While it is true that in *Miller* the Court determined that there would be no violation of Rule 3.7, it did so under circumstances very different than those present in this case.

5

In *Miller,* a case that was in its twelfth year at the time a determination was made concerning a disqualification issue, defendant argued not only that plaintiffs' counsel who might testify must withdraw from the case altogether, but also the rest of the law firm (Wilmer Hale), because it stood to gain financially from the lawsuit. The honorable Judge Lamberth concluded that because the proposed testimony was "innocuous fact-based evidence of the *government's* knowledge" there would be no prejudice to the defendant in permitting the testimony. *Miller v. Harbert,* 2007 U.S. Dist. LEXIS 18952 at *21. Judge Lamberth further concluded that there would be a "disastrous effect [on plaintiffs in] requiring three attorneys and one entire law firm who have been part of this case for twelve years to withdraw on the eve of trial." *Id.*

The circumstances in the present case are not at all comparable to those in *Miller.* Defendant does not intend to question plaintiffs' counsel about "innocuous fact based evidence," nor will it limit its questions to those outlined in plaintiffs' Opposition. Rather, counsel will be examined, among other things, as stated in defendant's Motion to Dismiss, on the documents and details relating to (1) their appointment, and the scope of their appointment, by the Superior Court – matters that bear directly on their authority from that court to appear in this Court in this action; (2) who authorized them to institute due process proceedings at DCPS and/or with whom they had retainer or other arrangements – also matters bearing on their status as next friend plaintiffs; (3) whether there are other Superior Court-appointed representative for the children involved, and whether children's guardians *ad litem* (or anyone else) authorized counsel to appear as next friend plaintiffs in this action; (4) whether they have requested reimbursement for

the services they are claiming here from the Superior Court, and whether payments have been received.

Further, while plaintiffs insist that "the fact that the attorneys' fees owed to the Plaintiffs is an uncontested issue…," defendant has conceded no such thing. (Opp. at 13) Defendant has yet even to answer the allegations in the Complaint, and indeed will contest the propriety of the fee claims asserted. But more importantly, the threshold "issue" that would be pursued if plaintiffs are permitted to continue with this case is not the fee details, as they contend, but the authority and capacity of the plaintiffs' counsel to act as plaintiffs here.

Plaintiffs have not established how they will be prejudiced should the instant case be dismissed, as they have another venue to turn to for payment, the DC Superior Court which appointed them as educational advocates, and to which, defendant has argued, they should look for fee payments.

**V.        Rule 3.7 should apply to all members of the law firm of Dalton, Dalton and Houston.**

On the one hand, plaintiffs claim that should this Court disqualify Mr. Houston and Ms. Dalton from proceeding with this case, the other attorney of record, Mr. Dalton should be permitted to proceed to trial. (Opp. at 14) However, as plaintiffs also state, "the attorneys in this case have represented some of the Plaintiffs for many years…." (Opp. at 15) This is not the only case that plaintiffs' counsel has filed, wherein they were appointed educational advocates by DC Superior Court and now seek fees in the United States District Court for the District of Columbia. To mention but two, *see Jackson v. District of Columbia,* Civ. No. 07-0138 (D.D.C.), and *Gray v. District of Columbia,* Civ. No. 06-0144 (D.D.C.)  Accordingly, since all three attorneys are named

here as attorneys of record, and all three have been appointed educational advocates to represent wards of the District of Columbia, defendants would seek to depose all three. Thus Rule 3.7 (b)[3] clearly applies to the instant case and no exception to Rule 3.7 exists to permit counsel to proceed as both plaintiffs and counsel of record in this case. The testimony to be elicited is not uncontested, it does not relate to the nature and value of legal services rendered in the case, and it would not work a substantial hardship on the client. While minor children are named as plaintiffs in the case, the true party in interest is the attorneys here. This is simply a case concerning the recovery of attorneys' fees. Should the instant case be dismissed, these attorneys would have recourse through the DC Superior Court, Family Division that appointed them.[4]

### VI. Defendant is Not Barred By the Doctrine of Estoppel From Arguing that Court Appointed Educational Advocates Cannot Collect Attorney's Fees Pursunt to IDEIA Claims.

Plaintiffs assert that defendant is barred by the doctrine of estoppel from arguing that educational advocates cannot bring IDEIA claims and seek attorneys' fees, because plaintiffs have previously submitted invoices to DCPS and have been paid. (Opp. at 16) While it does not relate the argument to the issue of Plaintiffs' counsel appearing in *this* action in *this* Court, the Opposition (pp. 15-17) does contend that the defendant should be estopped from contesting the legitimacy of claims to DCPS for payment of attorneys' fees, in light of the fact that DCPS has in the past in fact paid (at least in part) such

---

[3] Rule 3.7(b) states that: " A lawyer may not act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness . . . ."

[4] After the Supreme Court in *Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy,* 126 S. Ct. 2455, 2457 (2006) ruled that prevailing parents cannot recover expert fees in IDEIA cases DCPS stopped making payments for these costs. It is the undersigned's understanding that attorneys appointed by DC Superior Court to represent wards of the District are now requesting and being granted reimbursement for such costs by the Family Division of the DC Superior Court.

invoices.  However, whether viewed as an assertion of equitable estoppel or promissory estoppel (it is not said which), the plaintiffs' arguments fail

As a general matter, "the case for estoppel against the government must be compelling, and will certainly include proof of each of the traditional elements of the doctrine . . . ."  ATC Petroleum, Inc. v. Sanders, 274 U.S.App.D.C. 12, 860 F.2d 1104, 1111 (1988).  And the "elements of estoppel include: (1) a false representation; (2) a purpose to invite action by the party to whom the representation was made; (3) ignorance of the true facts by the party; (4) reliance; and (5) a showing of an injustice and a lack of undue damage to the public interest."  Washington Bancorporation v. Federal Deposit Insurance Corporation, No. 95-1340, 1996 U.S. Dist. Lexis 3876, at *47 (D.D.C. Mar. 19, 1996) (citing ATC Petroleum, Inc. v. Sanders, supra, 860 F.2d at 1111).[5]  No such showings have been made here.

Moreover, estoppel will not lie against the Government in the absence of a showing of "affirmative misconduct."  Cf., e.g., Larouche v. Federal Election Commission, 28 F.3d 137, 142 (D.C. Cir. 1994) ("A private party asserting estoppel against the United States Government must demonstrate . . . that the latter has engaged in "affirmative misconduct"[citing Conax Florida Corp. v. United States, 824 F.2d 1124,

---

[5] See also Kosakow v. New Rochelle Radiology Associates, 274 F.3d 706, 725 (2d Cir. 2001) ("Under federal law, a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment.")(citing Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 59 (1984)); Falcone v. Pierce, 864 F.2d 226, 228 (1st Cir. 1988) ("The traditional elements of equitable estoppel are first, a material misrepresentation of a party who had reason to know of its falsity; second, reasonable reliance upon the misrepresentation; and third, some disadvantage to the party seeking to assert estoppel fairly traceable to the misrepresentation") (citing Heckler, 467 U.S. at 59).

9

1131 (D.C.Cir. 1987)]).[6]  As recently observed in Artis-Bey v. District of Columbia, 884 A.2d 626, 638 (D.C. 2005), where a litigant similarly challenged the District's right to advance a failure-to-exhaust-administrative-remedies argument:

> It is "well established" . . . that "equitable estoppel will not lie against the Government as against private litigants," unless there is some finding of affirmative misconduct. *District of Columbia v. Greene,* 806 A.2d 216, 222 n.8 (D.C. 2002)(quoting *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419 . . . (1990).

As in Artis-Bey and Larouche, the Plaintiffs here do not assert "affirmative misconduct" by the District.  DCPS payments might well have been made as a matter of policy judgment, or based on a mistaken view of the applicable law.  Neither circumstance could reasonably be interpreted as "affirmative misconduct."  And it is no valid basis for barring a consideration of the arguments advanced by the defendant in this case.

        Respectfully submitted,

        LINDA SINGER
        Attorney General for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General, Civil Litigation Division

        /s/ Edward P. Taptich
        EDWARD P. TAPTICH [012914]
        Chief, Equity, Section 2

---

[6] See also Office of Personnel Management v. Richmond, 496 U.S. 414, 419 (1990) ("From our earliest cases, we have recognized that equitable estoppel will not lie against the Government as against private litigants").

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.,   Sixth Floor South
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov

June 4, 2007